# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

| | |
|---|---|
| In re: : | Chapter 7 |
| GARY W. WYATT, : | Case No. 3:19-bk-32198 |
| Debtor. : | Hon. Suzanne H. Bauknight, U.S.B.J. |
| CC FUNDING, A DIVISION OF CREDIT CASH NJ, LLC, : | |
| Plaintiff, : | |
| v. : | Adv. Pro. No.: _____ |
| GARY W. WYATT, : | |
| Defendant. : | |

### COMPLAINT (1) TO DETERMINE DISCHARGEABILITY OF DEBT AND/OR (2) TO OBJECT TO DISCHARGE

CC Funding, a division of Credit Cash NJ, LLC ("Credit Cash"), by and through its attorneys, alleges by way of Complaint against Defendant Gary W. Wyatt (the "Debtor") as follows:

### NATURE OF THE ACTION

1. Credit Cash files this Complaint (1) to determine dischargeability of certain debt owed to it pursuant to Section 523(a) of the Bankruptcy Code, 11 U.S.C. §§101 *et seq*. (the "Bankruptcy Code") and/or (2) to object to the granting of a discharge to the Debtor under Section 727(a) of the Bankruptcy Code.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157(b)(1) and 1334(b) and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

1

3. This adversary proceeding is a core proceeding as that term is defined in 28 U.S.C. §157(b)(2)(J).

4. Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §1409(a).

## FACTS

### A. Background

5. The Debtor was the majority shareholder and operator of G.W. Wyatt Contracting, LLC (the "Company"), a construction and development company that worked on multi-million-dollar projects such as constructing various Home Depots and Walmarts. The Company precipitously ceased operations in or around March 2019. *See* Meeting of Creditors ("341 Meeting") on August 20, 2019 at 28:47 – 29:02.

6. The Debtor and his business partner, Kevin Trent ("Trent") acquired the Company in October of 2013, and thereafter, the Company was owned 51% by the Debtor and 49% by Trent. *See* 341 Meeting on August 20, 2019 at 31:30 – 31:45.

7. On November 29, 2018, Credit Cash entered into an Accounts Receivable Advance Agreement (the "Advance Agreement") with the Company, pursuant to which Credit Cash agreed to advance funds to the Company under certain terms. The Advance Agreement is attached as Exhibit A to Proof of Claim 26-1 filed by Credit Cash on September 16, 2019 ("Claim 26-1"), which is incorporated by reference herein.

8. Pursuant to the Advance Agreement, the terms of the advances were set forth in the Advance Schedule (No. 1) dated December 6, 2018 (the "Advance Schedule," together with the Advance Agreement, the "Loan Agreement"). The Advance Schedule reflects the original amount due of $2,000,000, plus fees for a total original amount due of $2,300,000 (the "Loan"). *See* Claim 26-1, Exhibit A, at pp. 22-24.

9. In connection with the Loan, the Debtor also executed a personal Guaranty in favor of Credit Cash. *See* Claim 26-1, Exhibit B, at pp. 25-26.

10. In order to obtain the Loan, the Debtor provided Credit Cash with financial information about the Company and the Debtor, personally.

11. The Debtor provided Credit Cash a 2016-2017 audited financial statement for the Company, which was performed by Crane, Thompson & Jones, P.C., Certified Public Accountants, that showed the Debtor and Trent having a collective $14,032,366 in equity in the Company as of December 31, 2017, which included net income (after taxes) of $1,956,090.

12. The Debtor also provided Credit Cash a financial statement showing the Debtor and Trent having a collective $12,451,482 in equity in the Company as of September 30, 2018. The Company's September 30, 2018 financial statement that the Debtor provided Credit Cash is attached hereto as Exhibit A.

13. The Debtor also prepared and provided Credit Cash with a personal "Statement of Financial Condition," in which the Debtor estimated his Net Worth as of September 30, 2018, to be $12,387,544. This Statement of Financial Condition that the Debtor provided Credit Cash is attached hereto as Exhibit B.

14. On his personal Statement of Financial Condition (Exhibit B) the Debtor listed his assets as of September 30, 2018 to include, among others:

- Residence – 2307 Iris Lane          $1,726,500
- East Broadway Blvd.                 $5,300,000
- Common Stock GW Wyatt Contracting   $6,350,256
- Household furniture and fixtures    $1,098,560

15. Although he listed certain other liabilities associated with certain properties, the Debtor did not list his $1,726,500 residence at 2307 Iris Lane, New Market, Tennessee 37820

ME1 33469796v.1

("2307 Iris Lane") as one of those properties, giving the impression that he owned 2307 Iris Lane without any debt. *Id.*

16. He also did not report any mortgages, liens or encumbrances on his $5.3 million "East Broadway Blvd" property. *Id.*

17. The Debtor's purported $6,350,256 in common stock in the Company on his Statement of Financial Condition appears to be consistent with the September 30, 2018 Company financial statement the Debtor provided to Credit Cash given the Debtor's 51% ownership of the Company. *See* Exhibits A & B.

18. Despite these representations of the Debtor's and the Company's financial condition, by March 15, 2019 - less than five months after Credit Cash extended the Loan - the Company defaulted by failing to make payments under the Loan and ceased operating altogether.

19. On April 3, 2019, Credit Cash filed a Complaint in the United States District Court for the District of New Jersey against the Borrower, the Debtor, and other guarantors under the Loan, which is captioned as *CC Funding, a division of Credit Cash NJ, LLC, a Delaware limited liability company v. G.W. Wyatt Contracting, LLC, a Tennessee limited liability company, Gary Wyatt, Kevin Trent, and Trent Wyatt Contracting, LLC, a Tennessee limited liability company,* Case No. 2:19-cv-09229 (the "District Court Action").

20. The Debtor (and each of the other defendants) failed to answer the Complaint in the District Court Action.

21. Thus, on July 9, 2019, Credit Cash obtained a Final Judgment by default against the Debtor, the Company, and Trent Wyatt Contracting, LLC, finding each of them jointly and severally liable for the sum of $1,783,676.71, plus interest (the "Final Judgment"). *See* Claim 26-1, Exhibit C, at p. 27.

ME1 33469796v.1

**B.     Bankruptcy Petition, Schedules and Statement of Financial Affairs**

22.     Two days later, on July 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Bankruptcy Petition").

23.     On September 16, 2019, Credit Cash filed Claim No. 26-1 for $1,783,676.71, plus interest based on the Final Judgment.

24.     On the Petition Date, the Debtor filed the Bankruptcy Petition, but did not file his bankruptcy schedules or statement of financial affairs.

25.     The Debtor signed the Bankruptcy Petition, attesting to his review of the petition and declaring under penalty of perjury that the information provided therein is true and correct.

26.     On July 30, 2019, the Debtor filed, among other things, Schedules A/B, C, D, E/F G, H, I and J (collectively, the "Schedules"), the Statement of Financial Affairs ("SOFA"), and Official Form 106Dec, Declaration About an Individual Debtor's Schedules (the "Declaration").

27.     The Debtor signed the Declaration, declaring under penalty of perjury that the information provided on his Schedules was true and correct.

28.     The Debtor signed the SOFA, declaring under penalty of perjury that the information provided on the SOFA was true and correct.

**C.     Testimony at the 341 Meeting of Creditors**

29.     The Office of the United States Trustee appointed F. Scott Milligan, Esq. (the "Trustee") to serve as the interim chapter 7 trustee in the Debtor's bankruptcy case.

30.     The Trustee conducted a meeting of creditors pursuant to Section 341 of the Bankruptcy Code on August 20, 2019, which was adjourned to October 1, 2019, and ultimately concluded on January 28, 2020.

31. The Debtor took an oath at the beginning of the 341 Meeting, swearing to testify to the truth, the whole truth and nothing but the truth for the full duration of the 341 Meeting.

32. The Debtor testified that he and his wife jointly owned a boat, which sank in July of 2017. *See* 341 Meeting on August 20, 2019 at 20:00 – 24:40.

33. On October 19, 2017, the Debtor and his wife used approximately $605,000 in the joint insurance proceeds they received from the loss of the boat to purchase a 2006, twin diesel engine, 61 foot, Blackwell convertible sport fishing boat (the "Blackwell"). *See* [Doc. 34, p. 8]; 341 Meeting on August 20, 2019 at 20:00 - 24:40.

34. The Debtor testified that the Blackwell was transferred into, and is currently registered in, his wife's name only. 341 Meeting on August 20, 2019 at 20:00 - 24:40.

35. The Debtor and his wife keep the Blackwell in the Bohicket Marina in John's Island, South Carolina. 341 Meeting on August 20, 2019 at 20:00 - 24:40.

36. The Debtor claimed the Blackwell is not property of the estate, because it is registered in his wife's name, even though according to his SOFA it was purchased with "joint insurance proceeds . . . transferred from [a] joint bank account." 341 Meeting on October 1, 2019 at 1:27:40 – 1:28:14; [Doc. 34, p. 8].

37. The Debtor also testified, and his SOFA reflects, that within the two years before the Petition Date, the Debtor and his wife spent (from joint accounts) approximately $300,000-$400,000 in repairs and upgrades to the Blackwell. 341 Meeting on August 20, 2019 at 22:38 – 23:21; [Doc. 34, pp. 7-8].

38. The Debtor admitted at the 341 Meeting that the joint accounts used for these expenditures were comprised of the Debtor's earnings from the Company, not from his wife's income. 341 Meeting on August 20, 2019 at 25:20 – 26:11 ("Trustee: Did [the money] come

6

from your earnings out of G.W. Wyatt Contracting? Debtor: Earnings from any . . . opportunity that we had, yes sir. Trustee: . . . Was it any of [your wife's] salary or income? Debtor: She's a stay-at-home-mom. Trustee: Ok. So let me ask you again . . . the money that went into the account, did it come from your paycheck or paychecks? Debtor: That would be fair to say. . . . Trustee: . . . I realize it may have gone into a joint account . . . but it came from your employment or business deals? Debtor: Yes, sir.")

39.    The Debtor also testified, and his SOFA reflects, that in January of 2019, two months after he personally guaranteed the Loan from Credit Cash, and two months before the Company's default and closing its doors - he transferred the deed to 2307 Iris Lane from being solely in his name to a tenancy by the entirety between him and his wife. 341 Meeting on August 20, 2019 at 41:00 – 41:20; [Doc. 34, p. 7].

    D.    **Misrepresented or Concealed Assets and Failure to Explain Losses**

*$26 million Loss of Net Worth*:

40.    In the time between the Debtor's September 30, 2018 personal Statement of Financial Condition and the Petition Date, the Debtor's purported net worth declined $12,387,544 to -$14,582,831, a loss of more than $26 million in less than ten months. *Compare* Exhibit B with [Doc. 24] (Summary of Debtor's Assets and Liabilities showing just $2,922,897.88 in assets and $17,120,451.96 in liabilities).

*East Broadway Property*:

41.    On his September 30, 2018 Statement of Financial Condition, the Debtor claimed to own real property at "East Broadway Blvd," which he valued at $5.3 million, free of any liens or encumbrances. *See* Exhibit B.

42. According to his SOFA, the Debtor lost this East Broadway property in a foreclosure on April 25, 2019 – approximately seven months later. *See* [Doc. 34, p. 5 (regarding "803 E. Broadway Blvd, Jefferson City, TN") (hereinafter, the "East Broadway Property")].

43. Upon information and belief, the East Broadway Property was the location of the Company's headquarters.

44. During his 341 Meeting, the Debtor's only explanation for the rapid, less-than-five-month, destruction of a company that appeared on paper to be financially viable as of September 30, 2018 (*see* Exhibit A) was "one hundred and forty two days of a quarter inch or more rain in 2018." 341 Meeting on August 20, 2019 at 1:37:00 – 1:37:50.

45. The Debtor either misrepresented the extent of his interest in the East Broadway Property, or has failed to adequately explain this loss of an asset which he purported to own debt-free just seven months earlier, which is grounds for non-dischargeability of debt owed to Plaintiff pursuant to Section 523(a)(2)(B) of the Bankruptcy Code and/or denial of discharge pursuant to Sections 727(a)(3) and/or (5) of the Bankruptcy Code.

*The Debtor's Equity in the Company*:

46. On his September 30, 2018 Statement of Financial Condition, the Debtor claimed to own $6,350,256 in "Common Stock" in the Company. *See* Exhibit B.

47. By the Petition Date, the Debtor valued his 51% ownership in the Company to be $0. *See* [Doc. 25, p. 9].

48. The Debtor either misrepresented or otherwise concealed the true value of this company, or he has failed to adequately explain this loss, which is grounds for non-dischargeability of debt owed to Plaintiff pursuant to Section 523(a)(2)(B) of the Bankruptcy

8

Code and/or denial of discharge pursuant to Sections 727(a)(3) and/or (5) of the Bankruptcy Code.

*2307 Iris Lane*:

49. The Debtor's September 30, 2018 personal Statement of Financial Condition indicated he owned 2307 Iris Lane without a mortgage or any other liens or encumbrances on the property. *See* Exhibit B.

50. The Debtor's September 30, 2018 personal Statement of Financial Condition valued the 2307 Iris Lane property at $1,726,500. *Id.*

51. The Debtor's Schedule A/B values his 2307 Iris Lane property at $800,000 with a $770,295.47 outstanding mortgage attached to it held by Branch Banking and Trust Company ("BB&T") listed on Schedule D. [Doc. 25, p. 1; Doc. 27, p. 1].

52. The Debtor testified at his 341 Meeting that 2307 Iris Lane consists of 21 acres of land with a 6,000 square foot home situated on it. 341 Meeting on August 20, 2019 at 39:40 – 40:00.

53. The Debtor also testified that he did not have an appraisal for the value of the 2307 Iris Lane property from the past three to four years and instead, he relied on BB&T's "tax appraisal and loan value" for the $800,000 valuation. 341 Meeting on August 20, 2019 at 1:08:44 – 1:09:24; 39:59 – 40:18.

54. The Debtor has either misrepresented or otherwise concealed the value of this property and the Debtor's equity in it, which constitutes grounds for non-dischargeability of debt owed to Plaintiff pursuant to Section 523(a)(2)(B) of the Bankruptcy Code and/or denial of discharge pursuant to Sections 727(a)(3) of the Bankruptcy Code.

*The Debtor's Household Goods*:

55.    The Debtor's September 30, 2018 Statement of Financial Condition indicated he owned $1,098,560 in household furniture and fixtures. Exhibit B.

56.    Less than ten months later, the Debtor's Schedule A/B reflected a value of $34,492.00 for household goods and furnishings. [Doc. 25, pp. 7-9].

57.    During his 341 Meeting, the Debtor testified that he only had his household goods appraised for the first time for the purpose of filing for bankruptcy and the value was as stated in his Schedules. 341 Meeting on October 1, 2019 at 51:30 – 52:40.

58.    The Debtor either misrepresented or otherwise concealed the value of his household goods, fixtures, and furnishings, or has failed to adequately explain this loss of this property, which is grounds for non-dischargeability of debt owed to Plaintiff pursuant to Section 523(a)(2)(B) of the Bankruptcy Code and/or denial of discharge pursuant to Sections 727(a)(3) and/or (5) of the Bankruptcy Code.

    **E.**    **The Debtor Fraudulently Transferred Property**

*Repairs to the Blackwell*:

59.    During the two years prior to the Petition Date, the Debtor caused approximately $300,000 to be transferred out of a bank account he owned jointly with his wife in order to pay for repairs for the Blackwell.

60.    The Debtor testified at his 341 Meeting, he began considering to close the Company in the beginning of March of 2019 due to its failures. 341 Meeting on August 20, 2019 at 1:37:03 – 1:37:15.

61. The Debtor's SOFA reflects payments for "repairs" to the Blackwell in the amounts of $10,425.00 on February 23, 2019 and $29,344.75 on May 2, 2019, from "joint accounts."

62. The Debtor admitted at his 341 Meeting that the funds in the joint accounts used to pay for repairs to the Blackwell were comprised of the Debtor's earnings from the Company. 341 Meeting on August 20, 2019 at 25:20 – 26:11.

63. The Debtor's use of these funds for personal expenses at or around the time he realized his business was failing, and/or after the Company had already closed down, displays an intent by the Debtor to divert funds away from his creditors, and is therefore, grounds for a denial of discharge pursuant to Section 727(a)(2)(A) of the Bankruptcy Code.

*Transfer of Deed to 2307 Iris Lane*:

64. Just three months prior to the Company's shut down, in January of 2019, the Debtor transferred the deed to 2307 Iris Lane to create a tenancy by the entirety between him and his wife.

65. The diversion of this asset away from creditors contemporaneously with the failure of the Company and his bankruptcy filing shortly thereafter is grounds for a denial of discharge pursuant Section 727(a)(2)(A).

## COUNT ONE

### (Nondischargeability Pursuant to Section 523(a)(2)(B))

66. Credit Cash repeats each allegation set forth in this Complaint as if it were fully set forth herein.

67. The Debtor, as a personal guarantor of the Loan, provided Credit Cash with written financial statements for the Company as well as personal financial statements.

68. The Debtor did so in order to induce Credit Cash to extend the Company the Loan.

69. Credit Cash relied on both the personal and Company financial information the Debtor provided.

70. The financial information that the Debtor provided to Credit Cash is inconsistent and irreconcilable with the information listed on the Debtor's sworn schedules.

71. Assuming the Debtor's sworn schedules are truthful, the Debtor provided materially false writings to Credit Cash respecting his and his Company's financial conditions.

72. The Debtor did so, with an intent to deceive Credit Cash into providing the Company the Loan.

73. Specifically, but not exhaustively, the Debtor's personal Statement of Financial Condition as of September 30, 2019 valued his 2307 Iris Lane property at $1,726,500, without liens or encumbrances attached to it.

74. The Debtor's schedules valued 2307 Iris Lane at $800,000 with BB&T's $770,295.47 mortgage encumbering the property.

75. The Debtor admitted he had not actually obtained an appraisal of 2307 Iris Lane in the past three to four years.

76. On his September 30, 2018 Statement of Financial Condition, the Debtor claimed to own $6,350,256 in "Common Stock" in the Company.

77. The Debtor's schedules valued his 51% ownership in the Company to be $0.

78. On his September 30, 2018 Statement of Financial Condition, the Debtor claimed to own the East Broadway Property, which he valued at $5.3 million, without any liabilities whatsoever.

79. According to his SOFA, the Debtor lost this East Broadway Property in a foreclosure on April 25, 2019 – approximately seven months after the date of the Statement of Financial Condition.

80. The Debtor's September 30, 2018 Statement of Financial Condition indicated he owned $1,098,560 in household furniture and fixtures.

81. Less than ten months later, the Debtor's Schedule A/B reflected a value of $34,492.00 for household goods and furnishings.

82. During his 341 Meeting, the Debtor testified that he only had his household goods appraised for the first time for the purpose of filing for bankruptcy and the value was as stated in his Schedules.

**WHEREFORE**, Plaintiff CC Funding, a division of Credit Cash NJ, LLC seeks judgment against Defendant Gary W. Wyatt as to Count One of this Complaint:

A. that the debt owed to Plaintiff by Defendant be liquidated, held non-dischargeable and should be excepted from discharge pursuant to Section 523(a)(2)(B) of the Bankruptcy Code;

B. for attorneys' fees and costs of suit; and

C. for such other relief as is just and appropriate.

## COUNT TWO

### (Denial of Discharge Pursuant to Section 727(a)(2))

83. Credit Cash repeats each allegation set forth in this Complaint as if it were fully set forth herein.

84. As set forth on the Debtor's SOFA and explained in further detail in Section F above, the Debtor has transferred property of the Debtor within one year before the Petition Date.

13

85. The Debtor conveyed the property with the intent to hinder, delay and defraud Credit Cash and the Debtor's other creditors, and the Debtor knowing the impendency of his bankruptcy, the Trustee.

86. Specifically, but not exhaustively, the Debtor's SOFA reflects payments for "repairs" to the Blackwell in the amounts of $10,425.00 on February 23, 2019 and $29,344.75 on May 2, 2019, from "joint accounts."

87. The Debtor admitted at his 341 Meeting that the joint accounts used to pay for repairs to the Blackwell were comprised of the Debtor's earnings from the Company.

88. The Debtor's use of these funds for personal expenses at or around the time that he testified that his business was failing, and/or after the Company had already closed down, displays an intent by the Debtor to divert funds away from his creditors.

89. Just three months prior to the Company's shut down, the Debtor transferred the Deed to 2307 Iris Lane to create a tenancy by the entirety between him and his wife.

90. The diversion of this asset contemporaneously with the failure of the Company and his bankruptcy filing shortly thereafter is grounds for a denial of discharge pursuant Section 727(a)(2)(A).

91. Additionally, the Debtor claimed the Blackwell is not property of the estate, because it is registered in his wife's name, even though according to his SOFA it was purchased with "joint insurance proceeds . . . transferred from [a] joint bank account." 341 Meeting on October 1, 2019 at 1:27:40 – 1:28:14; [Doc. 34, p. 8].

92. Such statements to attempt to conceal estate property after the bankruptcy filing are grounds for a denial of discharge pursuant Section 727(a)(2)(B).

**WHEREFORE**, Plaintiff CC Funding, a division of Credit Cash NJ, LLC seeks judgment against the Defendant Gary W. Wyatt as to Count Two of this Complaint:

A. denying a discharge pursuant to Section 727(a)(2) of the Bankruptcy Code;

B. for attorneys' fees and costs of suit; and

C. for such other relief as is just and appropriate.

## COUNT THREE

### (Denial of Discharge Pursuant to Section 727(a)(3))

93. Credit Cash repeats each allegation set forth in this Complaint as if it were fully set forth herein.

94. The Debtor has unjustifiably, and without explanation, concealed, destroyed, mutilated, falsified, or failed to keep information from which the Debtor's financial condition or business transactions might be ascertained, which are specifically, but not exhaustively, as follows.

95. As of September 30, 2018, the Debtor claimed to own the East Broadway Property, which he valued at $5.3 million, without any liens or encumbrances whatsoever.

96. According to his SOFA, the Debtor lost the East Broadway Property in a foreclosure on April 25, 2019 – approximately seven months after claiming $5.3 million in equity.

97. On his September 30, 2018 Statement of Financial Condition, the Debtor claimed to own $6,350,256 in "Common Stock" of the Borrower.

98. By the Petition Date, just ten months later, the Debtor valued his 51% ownership in the Borrower to be $0.

99. The Debtor's September 30, 2018 Statement of Financial Condition indicated he owned $1,098,560 in household furniture and fixtures.

100. Less than ten months later, the Debtor's Schedule A/B reflected a value of $34,492.00 for household goods and furnishings.

101. During his 341 Meeting, the Debtor testified that he only had his household goods appraised for the first time for the purpose of filing for bankruptcy and the value was as stated in his Schedules.

102. The Debtor listed the 2307 Iris Lane property as having a value of $800,000 as of the Petition Date, even though just ten months earlier the Debtor valued 2307 Iris Lane at $1,726,500, which he purported own without any debt. The Debtor admitted under oath that he had not actually appraised this property in the past three to four years.

103. Additionally, the Debtor claimed at the 341 meeting that the Blackwell is not property of the estate, however, according to his SOFA, it was purchased with joint insurance proceeds.

**WHEREFORE**, Plaintiff CC Funding, a division of Credit Cash NJ, LLC, seeks judgment against Defendant Gary W. Wyatt as to Count Three of this Complaint:

A. denying a discharge pursuant to Section 727(a)(3) of the Bankruptcy Code;

B. for attorneys' fees and costs of suit; and

C. for such other relief as is just and appropriate.

## COUNT FOUR

### (Denial of Discharge Pursuant to Section 727(a)(4))

104. Credit Cash repeats each allegation set forth in this Complaint as if it were fully set forth herein.

105. The Debtor's statements and representations throughout the Bankruptcy Petition, Schedules, SOFA, and during the 341 Meeting were made under oath.

106. The Debtor made false statements and misrepresentations on the foregoing bankruptcy filings and/or at the 341 Meeting.

107. The Debtor listed the 2307 Iris Lane property as having a value of $800,000 as of the Petition Date, even though just ten months earlier, the Debtor valued 2307 Iris Lane at $1,726,500, which he purported own without any debt. The Debtor admitted under oath that he had not actually appraised this property in the past three to four years.

108. The Debtor claimed the Blackwell is not property of the estate, because it is registered in his wife's name, even though according to his SOFA it was purchased with "joint insurance proceeds . . . transferred from [a] joint bank account." 341 Meeting on October 1, 2019 at 1:27:40 – 1:28:14; [Doc. 34, p. 8].

109. The Debtor made these statements with fraudulent intent, including but not limited to the desire to hinder, delay and defraud Credit Cash, the Debtor's other creditors and the Trustee in the discovery and pursuit of property of Debtor's estate.

110. The statements are independently material to Debtor's bankruptcy case, and to Credit Cash's recovery of its collateral on the Loan.

111. Debtor is not entitled to a discharge pursuant to Section 727(a)(4)(A) of the Bankruptcy Code.

**WHEREFORE**, Plaintiff CC Funding, a division of Credit Cash, seeks judgment against Defendant Gary W. Wyatt as to Count Four of this Complaint:

A. denying a discharge pursuant to Section 727(a)(4)(A) of the Bankruptcy Code;

B. for attorneys' fees and costs of suit; and

C. for such other relief as is just and appropriate.

## COUNT FIVE

### (Denial of Discharge Pursuant to Section 727(a)(5))

112. Credit Cash repeats each allegation set forth in this Complaint as if it were fully set forth herein.

113. The Debtor should be denied a discharge under Section 727(a)(5) because he has failed to satisfactorily explain these losses, and others, which ultimately resulted in a negative swing of more than $26 million in the Debtor's overall net worth over the course of merely ten months.

114. Specifically, but not exhaustively, as of September 30, 2018, the Debtor claimed to own the East Broadway Property, which he valued at $5.3 million, without any liabilities whatsoever.

115. According to his SOFA, the Debtor lost the East Broadway Property in a foreclosure on April 25, 2019 – approximately seven months later.

116. On his September 30, 2018 Statement of Financial Condition, the Debtor claimed to own $6,350,256 in "Common Stock" of the Borrower.

117. By the Petition Date, the Debtor valued his 51% ownership in the Borrower to be $0.

118. The Debtor's September 30, 2018 Statement of Financial Condition indicated he owned $1,098,560 in household furniture and fixtures.

119. Less than ten months later, the Debtor's Schedule A/B reflected a value of $34,492.00 for household goods and furnishings.

120. During his 341 Meeting, the Debtor testified that he only had his household goods appraised for the first time for the purpose of filing for bankruptcy and the value was as stated in his Schedules.

121. The Debtor's September 30, 2018 personal Statement of Financial Condition indicated he owned 2307 Iris Lane without a mortgage or any other liability attributed to the property.

122. The Debtor's September 30, 2018 personal Statement of Financial Condition also valued the 2307 Iris Lane property to be worth $1,726,500.

123. The Debtor's Schedule A/B values his 2307 Iris Lane property at $800,000 with a $770,295.47 outstanding mortgage attached to it from BB&T listed on Schedule D.

124. The Debtor admitted he had not actually appraised 2307 Iris Lane in the past three to four years.

**WHEREFORE**, CC Funding, a division of Credit Cash NJ, LLC, seeks judgment against Defendant Gary W. Wyatt as to Count Five of this Complaint:

A. denying a discharge pursuant to Section 727(a)(5) of the Bankruptcy Code;

B. for attorneys' fees and costs of suit; and

C. for such other relief as is just and appropriate.

Dated: May 29, 2020

/s/ Alexandra Dugan (BPR No. 030420)
BRADLEY ARANT BOULT CUMMINGS, LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Phone: (615) 252-4638
adugan@bradley.com

*Attorneys for Creditor CC Funding, a division of Credit Cash NJ, LLC*